# EXHIBIT A

| SUMMONS | CIVIL DOCKET NO.<br>2485CV1379C | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| Case Name:  SKYLER WIERNIK, individually and on behalf of all<br>others similarly situated<br><br>Plaintiff(s)<br><br>vs.<br><br>WORCESTER POLYTECHNIC INSTITUTE<br><br>Defendant(s) | Dennis P. McManus          Clerk of Courts<br>Worcester                        County<br><br>COURT NAME & ADDRESS:<br>Worcester Superior Court<br>225 Main Street<br>Worcester, MA 01608 |
|---|---|

THIS SUMMONS IS DIRECED TO ___Worcester Polytechnic Institute

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the Worcester Superior Court.

<b>YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.</b>

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even I you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business,                Court

                                                    (address), by mail, in person, or electronically through

    the web portal www.eFileMA.com if the complaint was e-filed through that portal, **AND**

    b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:

    John P. Kristensen, Kristensen Law Group, 53 State St., Suite 500, Boston, MA 02109 - john@kristensen.law

**3. What to include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you mut include those claims in your Answer. Otherwise, you may lose your right to sue the plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont).** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice I the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Michael D. Ricciuti, Chief Justice on _____, 20____. (Seal)

Clerk  _____

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in the Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____    Signature: _____

**N.B.  TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court<br>Superior Court |
|---|---|---|
| | | COUNTY Worcester |

| Plaintiff: | Skyler Wiernik | Defendant: | WORCESTER POLYTECHNIC NSTITUTE |
|---|---|---|---|
| ADDRESS: | 39 Bent Road Sudbury, MA 01776 | ADDRESS: | 100 Institute Road, Worcester, Massachusetts, 01609 |
| | | | |
| | | | |
| Plaintiff Attorney: | John P. Kristensen | Defendant Attorney: | |
| ADDRESS: | 53 State St., Suite 500, Boston, MA 02109 | ADDRESS: | |
| | | | |
| BBO: | 712688 | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04 | Other Negligence – Personal Injury | F | ☒ YES    ☐ NO |

*If "Other" please describe: _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES    ☐ NO | ☒ YES    ☐ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date

  1. Total hospital expenses _____
  2. Total doctor expenses _____
  3. Total chiropractic expenses _____
  4. Total physical therapy expenses _____
  5. Total other expenses (describe below) _____

  _____

  Subtotal (1-5):     $0.00

B. Documented lost wages and compensation to date _____
C. Documented property damages to date _____
D. Reasonably anticipated future medical and hospital expenses _____
E. Reasonably anticipated lost wages _____
F. Other documented items of damages (describe below)     $4,000,000

  Data Breach related damages

  TOTAL (A-F):     $4,000,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

  Data Breach related damages

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X _____     Date: _____

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

N/A

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X  /s/John P. Kristensen     Date:     November 15, 2024

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | | |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | | |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | | |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | | |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (F) |
| PE1 | Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | | |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | | |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (F) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | | |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | | |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E(X) | |

### AA Administrative Civil Actions

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (X) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (X) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (X) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | |

### SO Sex Offender Review

| | | |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | | |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S(X) | |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04 | Other Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND ACCURATELY, THE CASE MAY BE DISMISSED.

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2485CV01379 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Wiernik, Skyler vs. Worcester Polytechnic Institute | Dennis P. McManus, Clerk of Courts<br>Worcester County |
|---|---|

| TO: John P Kristensen, Esq.<br>Kristensen Law Group<br>120 Santa Barbara St<br>Suite C9<br>Santa Barbara, CA 93105 | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |
|---|---|

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 02/13/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 03/17/2025 | |
| All motions under MRCP 12, 19, and 20 | 03/17/2025 | 04/14/2025 | 05/14/2025 |
| All motions under MRCP 15 | 03/17/2025 | 04/14/2025 | 05/14/2025 |
| All discovery requests **and depositions** served and non-expert depositions completed | 09/11/2025 | | |
| All motions under MRCP 56 | 10/14/2025 | 11/10/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/10/2026 |
| Case shall be resolved and judgment shall issue by | | | 11/16/2026 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 11/18/2024 | Anne O'Connor | (508)831-2361 |

Date/Time Printed: 11-18-2024 11:34:02

SCV026\ 08/2018

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT
CIVIL ACTION

Civil Case No.:

SKYLER WIERNIK, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

WORCESTER POLYTECHNIC
INSTITUTE,

Defendant.

COMPLAINT—CLASS ACTION

JURY DEMAND

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Skyler Wiernik ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendant Worcester Polytechnic Institute ("WPI" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## INTRODUCTION

1.     This class action arises out of the recent data security incident and data breach that was experienced by Defendant (the "Data Breach"), which held in its possession certain personally identifiable information ("PII" or the "Private Information") of Plaintiff and other current and former employees and/or students of Defendant's university, the putative class members ("Class"). This Data Breach occurred on or around September 18, 2024.

2.     The Private Information compromised in the Data Breach included certain personal information of Defendant WPI's current and former employees and students, including Plaintiff.

1

According to the notice Defendant mailed to Plaintiff (Exhibit A), the information compromised included Plaintiff's name and Social Security number.

3.       Defendant has reported to the Maine Attorney General's office that the personal information of 6,691 individuals was affected in the Data Breach.[1]

4.       The Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which it was entrusted for business relationships.

5.       Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was subjected to unauthorized access by an unknown third party and precisely what type of information was accessed.

6.       Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks and exposed to public view. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

7.       Defendant, through its employees, disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were

---

[1] Office of the Maine Attorney General, Data Breach Notifications, *available at* https://www.maine.gov/ag/consumer/identity_theft/index.shtml (*last accessed* November 14, 2024).

protected against unauthorized intrusions. Defendant also failed to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the Data Breach.

8.     In addition, Defendant failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant's employees (presumably in the IT department) properly monitored its property, it would have discovered the intrusion sooner.

9.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained was publicly exposed and may now be in the hands of data thieves.

10.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11.     Because of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and ongoing risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

12.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

14.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

15.     Accordingly, Plaintiff sues Defendant seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, and (iii) breach of implied contract.

**PARTIES**

16.     Plaintiff Skyler Wiernik is and at all times mentioned herein was an individual citizen of Massachusetts, residing in the city of Sudbury.

17.     Plaintiff provided Defendant with his sensitive PII as part of the process of applying to work for WPI. Defendant notified Plaintiff by mail on November 5, 2024, that his Private Information was affected by the Data Breach.

18.     Defendant WPI is a university with its principal place of business at 100 Institute Road, Worcester, Massachusetts, 01609.

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction over this action pursuant to Mass Gen. Laws ch. 212 § 4 because Plaintiff seeks injunctive relief and damages in excess of $50,000.00.

20.     This Court has personal jurisdiction over Defendant pursuant to Mass Gen. Laws ch. 223A § 2 because Defendant is domiciled and has its principal place of business in the commonwealth of Massachusetts.

4

21.    Venue is proper in this Court because Defendant maintains its principal place of business within Worcester County and because a substantial part of the acts or omissions giving rise to this action occurred within this county.

## **FACTUAL ALLEGATIONS**

### *Defendant's Business*

22.    Defendant is a private university.

23.    In the ordinary course of applying for employment and/or admission at WPI, each applicant must provide (and Plaintiff did provide) Defendant with sensitive, personal, and private information, including his or her Social Security number and contact information.

24.    Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

25.    The employee and student information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

### *The Data Breach*

26.    A Data Breach occurs when unauthorized parties gain access to Private Information that has not been adequately secured by a business entity like Defendant.

27.    According to the Notice letter defendant mailed to Plaintiff, the Data breach involved Plaintiff's name and Social Security number. Exhibit A.

28.    Defendant had obligations created by contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

5

29.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.     Defendant was or should have been aware of the significant risk that cybercriminals would attempt to steal Plaintiff's and Class Members' Private Information.

31.     As reported by the Identity Theft Resource Center, in 2023 a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[2] Of the 2023 recorded data breaches, 173 were in the education industry.[3]

32.     As reported in EdTech Magazine, "In higher education specifically, attacks were up 70 percent (68 in 2022 to 116 in 2023)."[4]

33.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**_Defendant Failed to Comply with FTC Guidelines_**

34.     The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

35.     In 2016, the FTC updated its publication, _Protecting Personal Information: A Guide for Business_, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of

---

[2] _See_ Identity Theft Resource Center, _2023 Data Breach Report_ (January 2024), _available at_ https://www.idtheftcenter.org/publication/2023-data-breach-report/ (_last accessed_ November 5, 2024).
[3] _Id._
[4] Viano, Andy, _Cyberattacks on Higher Ed Rose Dramatically Last Year, Report Shows_ (June 12, 2024), _available at_ https://edtechmagazine.com/higher/article/2024/03/cyberattacks-higher-ed-rose-dramatically-last-year-report-shows (_last accessed_ September 25, 2024).

personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[5] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[6]

36.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

37.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect client data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

38.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' and students' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[5] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited August 19, 2024).
[6] *Id.*

39.    Defendant was always fully aware of its obligation to protect the PII of its employees and students. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant Failed to Comply with Industry Standards*

40.    As shown above, educational institutions are widely known to be particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

41.    Several best practices have been identified that at a minimum should be implemented by universities like Defendant, including, but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

42.    Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

43.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

44.     These foregoing frameworks are existing and applicable industry standards for any business that handles and stores large volumes of sensitive information, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

## DEFENDANT'S BREACH

45.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  Failing to adequately protect employees' and students' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to put into place proper procedures, software settings, and data security software protections to prevent exposure of sensitive data on public networks;

    e.  Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

    f.  Failing to adhere to industry standards for cybersecurity.

46.     As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who mishandled sensitive files, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

47.     Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

***Because of Defendant's Failure to Safeguard Private Information, Plaintiff and the Class Members Have and Will Experience Substantial Harm in the Form of Risk of Continued Identity Theft.***

48.     Plaintiff and members of the proposed Class have suffered injury from the misuse

9

of their PII that can be directly traced to Defendant.

49.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients becomes a victim of identity fraud.

50.     Because of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.   The loss of the opportunity to control how their PII is used;

b.   The diminution in value of their PII;

c.   The compromise and continuing publication of their PII;

d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen PII; and

h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

51.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

52.     The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

53.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to abuse that information for money.

54.     One such example of criminals using PII for profit is the development of "Fullz" packages.

55.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

56.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

57.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that

11

year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

58.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly report to Plaintiff and the Class that their PII had been exposed.

59.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

60.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

61.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

62.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[7]

---

[7] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), *available at* http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (*last accessed*

63.    The FTC has also issued Many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1) encrypting information stored on computer networks;

(2) retaining payment card information only as long as necessary;

(3) properly disposing of personal information that is no longer needed;

(4) limiting administrative access to business systems;

(5) using industry-tested and accepted methods for securing data;

(6) monitoring activity on networks to uncover unapproved activity;

(7) verifying that privacy and security features function properly;

(8) testing for common vulnerabilities; and

(9) updating and patching third-party software.

64.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[8] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

65.    Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

_____

October 4, 2024).
[8] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-to-do-if-your-identity-stolen (last visited October 4, 2024).

13

## **PLAINTIFF'S EXPERIENCE**

66.    Plaintiff Skyler Wiernik is and at all times mentioned herein was an individual citizen of Massachusetts, residing in the city of Sudbury.

67.    Plaintiff is an employee at WPI, requiring him to provide his Private Information to Defendant.

68.    After Plaintiff provided Private Information, Defendant suffered a Data Breach.

69.    Plaintiff reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard his Private Information from unauthorized users or disclosure, and would timely notify him of any data security incidents related to the same. Plaintiff would not have provided his Private Information to Defendant had he known that Defendant would not take reasonable steps to safeguard it.

70.    Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff also stores any documents containing his sensitive information in a safe and secure location or destroys the documents.

71.    Plaintiff received a letter around November 5, 2024, notifying him that a data security event exposed his name and Social Security number to unauthorized persons.

72.    Because of the Data Breach and at the recommendation of Defendant and its Notice, Plaintiff made reasonable efforts to mitigate the effect of the Data Breach, including, but not limited to, researching the Data Breach and monitoring his credit and financial statements.

73.    Plaintiff has spent much time responding to the dangers from the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including, but not limited to work and recreation.

74.    Even with the best response, the harm caused to Plaintiff cannot be undone.

14

75.     Plaintiff knows that data such as that left exposed by WPI is an attractive target for cybercriminals, who often sell Private Information, and that his PII could be abused months or even years after a data breach.

76.     Had Plaintiff been aware that Defendant's computer systems were not secure, he would not have entrusted Defendant with his personal data.

## PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

77.     To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered 24 months of inadequate credit monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

78.     The 24 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

79.     Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

80.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

81.     Plaintiff was damaged in that his Private Information was publicly exposed, and he cannot know whether it is in the hands of cyber criminals.

15

82.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

83.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

84.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

85.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

86.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was made public in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

88.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

89.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

90.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

91.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

92.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure.

93.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.

94.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the September, 2024 Data Breach (the "Class").**

95.     Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

96.     Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

97.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them in a single proceeding is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has reported to the Maine Attorney General that 6,691 individuals were affected by the Data Breach.

98.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.  Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

    e.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f.  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

    g.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

18

h.  Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.  Whether Defendant failed to provide notice of the Data Breach promptly; and

j.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

99.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

100.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

101.  <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

102.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class

Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

103.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

104.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

105.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST COUNT
### NEGLIGENCE
#### (On Behalf of Plaintiff and All Class Members)

106.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

107.    Defendant required Plaintiff and Class Members to submit non-public personal information to work for and/or attend WPI.

108.    By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its

20

security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

109.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

110.    Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

111.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

112.    Defendant further had a duty to use reasonable care in protecting confidential data because Defendant is bound by industry standards to protect confidential Private Information.

113.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.  Failing to adequately monitor the security of its networks and systems;

    c.  Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

    d.  Allowing unauthorized access to Class Members' Private Information;

21

e.   Failing to detect timely that Class Members' Private Information had been compromised;

f.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

114.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

115.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

116.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

117.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

118.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

119.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

120.    When Plaintiff and Class Members provided their Private Information to Defendant in exchange for employment or for Defendant's services, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

22

121.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

122.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and adhered to industry standards.

123.    Plaintiff and Class Members paid money and/or supplied labor to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

124.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

125.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

126.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

127.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

128.    As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

129.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

23

130.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### THIRD COUNT
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and All Class Members)

131.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

132.    Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

133.    Under 201 C.M.R. § 17.03, *et seq.*, Defendant had a duty to "maintain a comprehensive information security program" that includes minimum protocols for computer security.

134.    Defendant breached its duties to Plaintiff and Class Members under Federal and state law by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

135.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

136.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

137.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

24

138.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class described above seeks the following relief:

a.  For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and his counsel to represent the Class, and finding that Plaintiff is a proper representative of the Class requested herein;

b.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.  For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e.  For an Order directing Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.  For an award of punitive damages, as allowable by law;

h.  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.  Pre- and post-judgment interest on any amounts awarded; and

j.  Any other relief that this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 15, 2024



Respectfully submitted,

*/s/ John P. Kristensen*

John P. Kristensen, BBO # 712688
KRISTENSEN LAW GROUP
53 State Street, Suite 500
Boston, MA 02109
Telephone: (617) 913-0363
john@kristensen.law

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
EKSM, LLP
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

ATTORNEYS FOR PLAINTIFF
(* denotes *pro hac vice* forthcoming)

# EXHIBIT A



Secure Processing Center
P.O. Box 3826
Suwanee, GA 30024

Enrollment Code: ▮▮▮▮▮▮

Or Visit:

https://www.experianidworks.com/credit

7 1 2504 ***************AUTO**ALL FOR AADC·015
Skyler Keslow Wiernik

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮     ‖‖‖‖‖‖‖‖‖‖‖‖

November 5, 2024

Dear Skyler Keslow Wiernik:

Worcester Polytechnic Institute ("WPI") writes to notify you of an event that may affect the privacy of some of your information. This letter provides you with information about the resources that are available to you to help protect your information.

Please know that we take the security of information in our care seriously. We investigated this event to determine what occurred and what information may have been affected. Our investigation determined that the event involved your name and Social Security number.

## Enroll in Monitoring Services

As an added precaution, we are offering complimentary access to Experian IdentityWorks℠ for 24 months.

If you believe there was fraudulent use of your information as a result of this event and would like to discuss how you may be able to resolve those issues, please reach out to an Experian agent. If, after discussing your situation with an agent, it is determined that identity restoration support is needed then an Experian Identity Restoration agent is available to work with you to investigate and resolve each incident of fraud that occurred from the date of the incident (including, as appropriate, helping you with contacting credit grantors to dispute charges and close accounts; assisting you in placing a freeze on your credit file with the three major credit bureaus; and assisting you with contacting government agencies to help restore your identity to its proper condition).

Please note that Identity Restoration is available to you for 24 months from the date of this letter and does not require any action on your part at this time. The Terms and Conditions for this offer are located at www.ExperianIDWorks.com/restoration.

While identity restoration assistance is immediately available to you, we also encourage you to activate the fraud detection tools available through Experian IdentityWorks as a complimentary 24-month membership. This product provides you with superior identity detection and resolution of identity theft. To start monitoring your personal information, please follow the steps below:

- Ensure that you **enroll by** January 31, 2025 (Your code will not work after this date.)
- **Visit** the Experian IdentityWorks website to enroll: https://www.experianidworks.com/credit
- Provide your **activation code:** ▮▮▮▮▮▮▮

If you have questions about the product, need assistance with Identity Restoration that arose as a result of this event, or would like an alternative to enrolling in Experian IdentityWorks online, please contact Experian's customer care team at 877.288.8057 by January 31, 2025. Be prepared to provide engagement number B134022 as proof of eligibility for the Identity Restoration services by Experian.